<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| AMERICINN INTERNATIONAL, LLC, a Minnesota Limited Liability Company; and WYNDHAM HOTEL GROUP, LLC, a Delaware Limited Liability company,<br><br>      *Plaintiffs*,<br><br>  v.<br><br>JAY MAHARAJ LLC, a Nebraska Limited Liability Company; KETAN B. CHAUDHARI, an individual; and RASHMI SAMANI, an individual,<br><br>      *Defendants*. | Civil Action No. 25-13783<br><br>**OPINION**<br><br>July 20, 2026 |

**SEMPER**, District Judge.

  **THIS MATTER** comes before the Court upon a Motion for Default Judgment filed by Plaintiffs AmericInn International, LLC ("AFD") and Wyndham Hotel Group, LLC ("WHG") (collectively, "Plaintiffs") against Defendants Jay Maharaj LLC ("Maharaj LLC"), Ketan B. Chaudhari ("Chaudhari"), and Rashmi Samani ("Samani") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2). (ECF 9, "Motion" or "Mot.") The Court has decided this Motion upon submission, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' Motion is **DENIED** without prejudice.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

This action arises from Defendants' alleged breach of a franchise agreement ("Franchise Agreement" or "Agreement") for the operation of a 78-room AmericInn® guest lodging facility (the "Facility") in Omaha, Nebraska, and their subsequent failure to respond to pleadings or defend against Plaintiffs' Complaint. (ECF 1, "Complaint" or "Compl."; *see generally* Mot.)

Plaintiff AFD is a limited liability company organized and existing under the laws of Minnesota, maintains its principal place of business in Parsippany, New Jersey, and is a wholly owned subsidiary of Plaintiff WHG. (Compl. ¶¶ 1-2.) Plaintiff WHG is a limited liability company organized and existing under the laws of Delaware, maintains its principal place of business in Parsippany, New Jersey, and is a wholly owned subsidiary of Wyndham Hotels and Resorts, Inc. (*Id.* ¶¶ 2-3.) Defendant Maharaj LLC is a limited liability company organized and existing under the laws of Nebraska with its principal place of business in Elkhorn, Nebraska. (*Id.* ¶ 4.) Defendants Ketan Chaudhari and Rashmi Samani are natural persons both residing in Elkhorn, Nebraska. (*Id.* ¶¶ 5-6.)

On or around June 22, 2023, AFD and Maharaj LLC entered into the Franchise Agreement governing the operation of an AmericInn® facility located in Omaha, Nebraska for a fifteen-year period. (*Id.* ¶¶ 12, 15; *id.* at Ex. A, "Franchise Agreement" or "FA.") Around the same time, AFD and Maharaj LLC entered into a Master Technology Subscription Agreement (the "MTS Agreement") and Signature Reservation Services Agreement ("SRS Agreement"), which allowed

---

[1] The facts and procedural history are drawn from the briefings (ECF Nos. 1, 5, 6, 7, 8, 9) and documents integral to or relied upon by the briefings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Maharaj LLC to utilize AFD's technology, software, and reservation assistance systems. (*Id.* ¶¶ 13-14; *id.* at Ex. B, "MTS Agreement" or "MTS"; *id.* at Ex. C, "SRS Agreement" or "SRS.") Upon the Franchise Agreement taking effect, Defendants Chaudhari and Samani provided AFD with a Guaranty, signed by both individuals. (*Id.* ¶ 25; *id.* at Ex. D, "Guaranty.") The Guaranty provided assurances that in the event of default, Defendants Chaudhari and Samani would perform Maharaj LLC's obligations under the Franchise Agreement, and would "make each payment and perform or cause [Jay Maharaj] to perform each unpaid or unperformed obligation of [Jay Maharaj] under the Agreements." (*Id*. ¶¶ 25-26; *see* Guaranty.)

Defendants Maharaj LLC, Chaudhari, and Samani also co-made a Development Incentive Note (the "Note") in the amount of $312,200.000, effective as of June 22, 2023, in connection with the Franchise Agreement. (Compl. ¶¶ 28, *id.* at Ex. E, "Note.") Pursuant to the terms of the Note, on each anniversary of the Opening Date, an amount equal to the original amount of the Note divided equally by the number of complete Franchise Years remaining would be forgiven without payment. (*See id.*) The Note also provided that, upon termination of the Franchise Agreement, "the outstanding principal balance shall be immediately due and payable without further notice, demand or presentment," and that, if the Note was not paid within the ten (10) days after it was due, the outstanding principal balance would bear an interest rate of 18% per year. (*See id.*)

The Franchise Agreement itself subjects Maharaj LLC to several requirements, including, but not limited to: making periodic payments to Plaintiffs for royalties, system assessment fees, technology fees, reservation fees, taxes, interest, and other fees ("Recurring Fees"); complying with AFD's "System Standards"; refraining from—and ensuring representatives and agents refrain from—unlawful and damaging conduct damaging to AFD's goodwill or public image; paying liquidated damages in accordance with the formula specified in the Franchise Agreement in the

3

event of termination; and agreeing that in the event of termination, the "non-prevailing party" would pay legal costs. (Compl. ¶¶ 16-24.) Plaintiffs allege that Defendants breached the Franchise Agreement because they "failed to meet its operational and goodwill obligations" when, on January 8, 2025, several hotel employees were arrested and charged with human trafficking. (*Id.* ¶¶ 33-35.) On January 21, 2025, Plaintiffs advised Defendant Maharaj LLC by letter that it was in breach of its obligations under the Franchise Agreement to uphold the goodwill and public image of the AmericInn® brand, had thirty (30) days to cure its operational default, and that the Franchise Agreement might be subject to termination if the default was not cured. (*Id.* ¶ 35.) On March 20, 2025, Plaintiffs terminated the Franchise Agreement due to Defendants' continuing operational default and advised Defendants that they were required to pay liquidated damages, outstanding Recurring Fees through the date of termination, and the outstanding principal balance of the Note. (*Id.* ¶ 36; *id.* at Ex. G, "Notice of Termination" or "Notice.")

Plaintiffs filed their Complaint on July 25, 2025, alleging seven counts, and ordering Defendants to perform their obligations under the Franchise Agreement. (*See generally* Compl.) Defendant Maharaj LLC's authorized agent was served on August 27, 2025. (ECF 6.) Defendants Chaudhari and Ramani were also individually served on August 27, 2025. (*Id.*; ECF 7.) Defendants have not filed an answer or otherwise responded to the Complaint. On October 23, 2025, Plaintiffs petitioned the Clerk of the Court to issue an entry of default against Defendants. (ECF 8.) The Clerk of the Court entered default against Defendants on October 24, 2025. (*Id.*) Plaintiffs filed the instant Motion on February 12, 2026. (Mot.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v.*

*Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). Before the Court grants a motion for default judgment, however, it must ensure, *inter alia*, (1) that personal jurisdiction exists over the defendant and (2) "that entry of default under Rule 55(a) was appropriate." *Gov't Emps. Ins. Co. v. Pennsauken Spine & Rehab P.C.*, No. 17-11727, 2018 WL 3727369, at *2 (D.N.J. Aug. 6, 2018). Where the Court has jurisdiction, because the entry of default judgment prevents a decision on the merits, the mere fact of default does not entitle a plaintiff to judgment. Rather, "[i]t is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). An entry of default judgment requires that the Court determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law." *Chanel, Inc.*, 558 F. Supp. 2d at 535. After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181.

5

### III.    ANALYSIS

#### A.  Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'"  *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (internal citation omitted).  For the reasons explained below, this Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendants.

##### i.   Subject Matter Jurisdiction

A district court has original jurisdiction over an action when there is diversity jurisdiction pursuant to 28 U.S.C. § 1332 or when there is federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Diversity jurisdiction exists when there is a dispute between citizens of different states alleging an amount in controversy in excess of $75,000.  *See* 28 U.S.C. § 1332(a).  While "[a] corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business … the citizenship of an LLC is determined by the citizenship of its members."  *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).  "For complete diversity to exist, all of the LLC's members 'must be diverse from all parties on the opposing side.'"  *Id.*

There is complete diversity of citizenship between Plaintiffs and Defendants.  Here, AFD is a limited liability company organized and existing under the laws of Minnesota and with its principal place of business in Parsippany, New Jersey.  (Compl. ¶ 1.)  AFD is a wholly owned subsidiary of WHG, which is a limited liability company organized and existing under the laws of Delaware and with its principal place of business in Parsippany, New Jersey.  (*Id.* ¶ 2.)  WHG is the sole member of AFD.  (ECF 3 at 1.)  WHG is a wholly owned subsidiary of Wyndham Hotels

& Resorts, Inc., which is a corporation organized and existing under the laws of Delaware and with its principal place of business in Parsippany, New Jersey.  (Compl. ¶ 3.)  Wyndham Hotels & Resorts, Inc., is the sole member of WHG.  (ECF 3 at 1.)  Defendant Maharaj LLC, on information and belief, is a limited liability company organized and existing under the laws of Nebraska, with its principal place of business in Elkhorn, Nebraska.  (Compl. ¶ 4.)  Defendants Chaudhari and Samani are the sole members of Jay Maharaj LLC, and are each citizens of Nebraska.  (*Id.* ¶¶ 5-7.)  Finally, the amount in controversy requirement is satisfied, as Plaintiffs seek damages in excess of $75,000.  (*See id.* ¶¶ 38-68 (seeking $234,000 in liquidated damages, $30,403.99 in Recurring Fees, and $312,000 due and owing under the Note as of July 25, 2025); ECF 3 at 2 (same); ECF 9-6, "Mallet Affidavit," or "Mallet Aff." ¶ 43 (seeking $675,817.99, including interest, as of March 16, 2026).)  The Court has subject matter jurisdiction over this action.

ii.  Personal Jurisdiction

"[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction."  *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (internal citations omitted).  "[I]n contrast to the general rule that personal jurisdiction is waivable, a court considering a motion for a default judgment must *sua sponte* ensure that an exercise of personal jurisdiction over each defaulting defendant is proper."  *Id.* (internal citations omitted).

"A forum selection clause may act as consent to personal jurisdiction, thus obviating the need for a personal jurisdiction analysis."  *Harfouche v. Wehbe*, 950 F. Supp. 2d 766, 770 (D.N.J. 2013).  "A forum selection clause is presumptively valid and enforceable, unless the objecting party demonstrates it is the result of fraud, it violates a strong public policy of the forum state, or

7

enforcement would be unreasonable under the circumstances." *Gebhardt v. Beri*, No. 23-3008, 2024 WL 3279531, at *4 (D.N.J. June 14, 2024) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 201 (3d Cir. 1983); *Cambridge Mgmt. Group LLC v. Baker*, No. 12-3577, 2013 WL 1314734, at *8 (D.N.J. Mar. 28, 2013)).  Further, "[w]here a party executes a guaranty for a contract in which a forum selection clause exists, the party is also subject to the terms of the forum selection clause." *See Days Inn Worldwide Inc. v. Major Resorts, LLC*, No. 23-945, 2024 WL 1366473, at *3 (D.N.J. Mar. 31, 2024); *see also Gebhardt*, 2024 WL 3279531, at *5 ("Courts in this district have consistently held that where a non-signatory to the contract containing the forum selection clause has executed a related contract, acknowledgement, or personal guaranty, the forum selection clause and its personal jurisdiction ramifications will apply with equal force to that non-signatory party.").

The Court has personal jurisdiction over Defendants. First, in Section 17.6.3 of the Franchise Agreement, Defendant Maharaj LLC consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey, and the United States District Court for the District of New Jersey for all controversies under this Agreement ...."  (Compl. ¶ 9; FA § 17.6.3.)  Further, Defendants Chaudhari and Samani acknowledged that they were personally bound by Section 17 of the Franchise Agreement in the Guaranty.  (Compl. ¶ 10; *see* Guaranty.)  Here, Defendant Maharaj LLC signed and agreed to the Franchise Agreement, and Defendants Chaudhari and Samani signed and agreed to the Guaranty. (*See* FA at 30; Guaranty.)  No Defendants have objected to the application of the forum selection clause against them, nor demonstrated that the clause is a result of fraud, violates a strong public policy, or that enforcement would be unreasonable.  *See Gebhardt v. Beri*, 2024 WL 3279531, at *4.  As such, this Court has personal jurisdiction over all Defendants.  *See Super 8 Motels, Inc. v.*

8

*AUM Corp.*, 2008 WL 4951217, at \*4 (D.N.J. Nov. 18, 2008) (exercising personal jurisdiction over defendants that signed a franchise agreement containing a forum selection clause and defendants that signed a Guaranty incorporating the forum selection clause and no contravening factors were demonstrated).

### B.  Service of Process

Second, a court must determine whether there is sufficient proof of service prior to entering default judgment.  *Tr. of Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting, LLC*, No. 17-5739, 2021 WL 3674353, at \*3 (D.N.J. Aug. 19, 2021).

As a limited liability company, Defendant Maharaj LLC may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).  Here, Plaintiff provides the Court with an Affidavit of Service indicating that personal service was made upon Defendant's authorized agent on August 27, 2025.  (*See* ECF 6.)

For service to be proper on an individual, Rule 4 requires service to be effectuated by a nonparty "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P. 4(e)(2)(B).  Plaintiffs provide the Court with an Affidavit of Service dated August 27, 2025, indicating that personal service was made by a nonparty to the action who delivered copies of the Summons and Complaint to Defendants Chaudhari and Samani at their places of abode in Nebraska.  (ECF 6; ECF 7.)  Thus, service of all Defendants was proper, and the Court is satisfied

that it has jurisdiction to enter default judgment. *See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

### C.  Entry of Default

Third, the Court must ensure that the entry of default under Rule 55(a) was appropriate. Rule 55(a) directs the Clerk of the Court to enter a party's default when the party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  Here, Plaintiff requested that the Clerk issue an entry of default on October 23, 2025, attesting that Defendants failed to timely respond to the Complaint.  (ECF 8.)  As such, the Clerk appropriately issued an entry of default on October 24, 2025.  (ECF  9.)

### D.  Fitness

Further, "the Court must confirm that the defaulting parties are not infants or incompetent persons, or persons in military service exempted from default judgment." *Barrett v. Tri-Coast Pharmacy*, 518 F. Supp. 3d, 810, 822 (D.N.J. 2021) (citing Fed. R. Civ. P. 55(b)(2)); 50 U.S.C.A. § 3931(b)(1)).  Neither of these requirements apply to Defendant as it is a corporate entity. *See, e.g.*, *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2016 WL 5660426, at *3 (D.N.J. Sept. 29, 2016).  Further, Plaintiffs have satisfied the requirements with respect to Defendants Chaudhari and Samani.  Plaintiffs allege that neither Defendant Chaudhari nor Samani are infants or otherwise incompetent, (ECF 9-5 ¶¶ 14-15), and submitted affidavits verifying that neither Defendant is in the military service of the United States nor the military services of any allied nations.  (*See id*. at Exs. B, C.)  All Defendants are thus fit for default judgment.

### E. Sufficiency of Plaintiffs' Cause of Action

Fourth, the Court must determine whether the Complaint states a proper cause of action. In performing this inquiry, the Court accepts as true a plaintiff's well pleaded factual allegations while disregarding mere legal conclusions. *See DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533 at *1 (D.N.J. Mar. 14, 2006). "To state a claim for breach of contract, a plaintiff must allege: (1) a valid contract; (2) breach of that contract; and (3) resulting damages." *Ramada Worldwde Inc. v. Steve Young Kim*, No. 9-4534, 2010 WL 2879611, at *3 (D.N.J. Jul. 15, 2010) (citing *AT&T Credit Corp. v. Zurich Data Corp.*, 37 F. Supp. 2d 367, 370 (D.N.J. 1990)).

First, Plaintiffs allege that there was a valid contract. (*See* Compl. ¶¶ 12-13 (alleging that Plaintiff AFD entered into the Franchise and MTA Agreements with Defendant Maharaj LLC); *id.* ¶ 14 (alleging that Plaintiff WGH entered into the SRS Agreement with Defendant Maharaj LLC); *id.* ¶¶ 25-27 (alleging that Plaintiff AFD entered into the Guaranty with Defendants Chaudhari and Samani); *id.* ¶¶ 28-32 (alleging that all Defendants entered into a Note with Plaintiff AFD).) Second, Plaintiffs allege that Defendants breached the various valid contracts by breaching their obligations under the Franchise Agreement, (*see id.* ¶¶ 33-37), failing to pay outstanding Recurring Fees and liquidated damages under the Franchise, MTA, and SRS Agreements and the Guaranty, (*see id.* ¶¶ 44-47, 53-55, 61-63), and failing to pay the outstanding principal balance of the Note. (*See id.* ¶¶ 65-68.) Finally, Plaintiffs allege they suffered damages because of Defendants' various breaches. (*See id.* ¶¶ 47, 51, 55, 59, 67, 68.) Plaintiffs therefore state a sufficient cause of action for breach of contract. *See Steve Young Kim*, 2010 WL 2879611, at *3 (granting plaintiff's motion for default judgment where they stated a sufficient cause of action for breach of contract); *FR8*

11

*Zone, Inc. v. All Jays Enterprises, Inc.*, No. 20-5560, 2024 WL 1231340, at *5 (D.N.J. Mar. 22, 2024) (same).[2]

### F.  Whether Default Judgment Would Be Proper

The Court must next consider (1) whether the party subject to the default has a meritorious defense, (2) the prejudice suffered by the party seeking default judgment, and (3) the culpability of the party subject to default.  *Doug Brady, Inc.*, 250 F.R.D. at 177.  The Court concludes that all three factors weigh in favor of default judgment.

First, Defendants lacks a meritorious defense.  *See Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012) ("assum[ing] that the Defendants have no litigable defenses available" because they "have not filed anything with the Court," "have offered no defense," and "the facts asserted in the complaint do not contain any information that could provide the basis for a meritorious defense"); *see also Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding no meritorious defense where court could not determine its existence since defendant did not respond).  Defendants were properly served and have failed to defend or otherwise respond to the Complaint.  *See supra* at Part III.B.

Second, the Court finds that Plaintiffs will suffer prejudice absent entry of default judgment.  Plaintiffs have been prevented from seeking relief due to Defendants' failure to engage

---

[2] The Court notes that this District has also, at times, required plaintiffs to allege they performed their own contractual allegations to state a sufficient cause of action for breach of contract.  *See, e.g.*, *Great Caesars Ghost LLC v. Unachukwu*, No. 19-5408, 2020 WL 133190, at * (D.N.J. Jan. 10, 2020) ("Under New Jersey law, to state a claim for breach of contract, a plaintiff must allege that there is (1) a valid contract; (2) plaintiff performed under the contract; (3) defendant's breach of the contract; and (4) resulting damages."); *Rastellis Brothers, Inc. v. Justice Gov't Supply, Inc.*, No. 24-390, 2025 WL 399712, at *3 (D.N.J. Feb. 5, 2025) (same).  Plaintiffs have sufficiently made this allegation.  (*See* Compl. ¶ 37.)

in this litigation. *See Barrett*, 518 F. Supp. 3d at 829-30 (finding a plaintiff would suffer prejudice in the absence of default judgment because it "had no other means of vindicating its claim" since the defendant "failed to appear or answer"); *Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) (same). Further, the longer Plaintiffs go without payments from Defendants, the more they will be harmed, as evidenced by the fact that their alleged damages increased from $576,403.99 in July 2025 to $675,817.99 in March 2026 due to interest. (*See* Compl. ¶¶ 38-68; ECF 9-6 ¶ 43.) *See Steve Young Kim*, 2010 WL 2879611, at *4 (finding that a plaintiff would suffer prejudice if default were denied because the recurring fees owed by the defendant increased over time).

Finally, absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in its default." *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *4. In this case, there is nothing before the Court to suggest that Defendant's failure to respond was not willfully negligent. *See id.* (citing *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted). Accordingly, an entry of default judgment against Defendant would be proper.

### G. Damages

Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must nonetheless prove damages. *Corbin*, 908 F.2d at 1149. For the reasons explained below, the Court concludes Plaintiffs have not sufficiently proved damages at this time.

13

i. Recurring Fees

Plaintiffs seek outstanding Recurring Fees in the amount of $33,769.13, inclusive of interest. (Mot. at 7.) In support of their request, Plaintiffs submit a sworn affidavit and itemized statement detailing their Recurring Fees and interest calculations, (*see* ECF 9-6 ¶ 29; *id.* at Ex. H), using formulas set forth in Section 7 and Schedule C of the Franchise Agreement, Section 4 and related schedules of the MTA Agreement, and Section 1 and related schedules of the SRS Agreement to reach $33,769.13. (*Id.*; *see, e.g.*, FA § 7 & Schedule C; MTA § 4; SRS § 1.)

Where plaintiffs already seek liquidated damages to compensate for lost Recurring Fees due to an agreement's premature termination, this Court has refused to grant requests for separate Recurring Fees incurred ***after*** an agreement's termination as doing so would impermissibly provide double recovery. *See, e.g.*, *Days Inn Worldwide, Inc. v. Fine Hospitality, Inc.*, No. 16-553, 2017 WL 405146, at *5 (D.N.J. Jan. 30, 2017) (denying a plaintiff's request for recurring fees that accrued after a contract's termination, where liquidated damages were also sought, to prevent double recovery); *Ramada Worldwide Inc. v. Khan Hotels LLC*, No. 16-2477, 2017 WL 187384, at *7 (D.N.J. Jan. 17, 2017) (same); *Days Inns Worldwide, Inc. v. Savita Hosp. Grp., Inc.*, No. 13-2863, 2014 WL 3748204, at *4 (D.N.J. July 28, 2014) (same); (FA § 12.1 ("Liquidated Damages are paid in place of our claims for lost future Recurring Fees under this Agreement.").) And here, the itemized statement submitted by Plaintiffs does not clearly prove that they do not seek Recurring Fees accruing after the termination of the Franchise Agreement. (*See* Mallet Aff. at Ex. H (charging fees for "GUEST SATISFACTION-WYNREWARDS," "WYNDHAM REWARDS 5%," "GDS INTERNET CONNECTIVITY FEE March 2025," "RATE SHOPS 3-2025 Active (RMS) PCBNAMER," and "TRAVEL AGENT COMMISSIONS" in an April 2025 invoice).) The Court is unable to confirm that Plaintiffs' assertion that "any fee set forth on the itemized

statement that includes an invoice date later than the March 20, 2025 termination date of the Franchise Agreement is for a fee that accrued on or before the March 20, 2025 termination date," (Mot. at 7, n.2; Mallet Aff. ¶ 29, n.1), applies to every fee in the April 2025 invoice without further documentation.[3]   The Court thus **DENIES**, without prejudice, Plaintiffs' request for $33,769.13 in Recurring Fees and interest.[4]   When filing a renewed motion, Plaintiffs shall submit documentary evidence proving that the April 2025 charges for "GUEST SATISFACTION-WYNREWARDS," "WYNDHAM REWARDS 5%," and "TRAVEL AGENT COMMISSIONS" accrued on or before the March 20, 2025 termination date.

### ii.   Liquidated Damages

Plaintiffs also seek $274,505.40 in liquidated damages.  (Mot. at 8.)  "Under New Jersey law, liquidated damages clauses may [] be enforced if they reasonably forecast the harm resulting from breach."  *Knights Franchise Sys., Inc. v. First Value RC, LLC*, No. 13-4976, 2017 WL 1170849, at *3 (D.N.J. Mar. 29, 2017) (citation omitted).  The enforceability of a liquidated damages clause is a question of law to be decided by the Court.  *See Ramada Worldwide, Inc. v. Columbia SC Hosp., LLC*, No. 17-13020, 2018 WL 3105421, at *5 (D.N.J. Jun. 25, 2018).  This Court frequently enforces liquidated damages clauses at default judgment where the parties negotiated, and defendants do not dispute the reasonableness of, the clause.  *See, e.g.*, *id.* (noting that the parties negotiated the liquidated damages calculation and defendants did not "provide any reasons as to why" the damages should not be awarded); *Knights Franchise Sys., Inc*, 2017 WL

---

[3] The Court accepts the April 2025 charges for "GDS INTERNET CONNECTIVITY FEE March 2025" and "RATE SHOPS 3-2025 Active (RMS) PCBNAMER" as they indicate they accrued on or before the Franchise Agreement's termination date.  (*See* Mallet Aff. at Ex. H.)

[4] The Court notes that Plaintiffs applied the proper interest rate in their calculation of Recurring Fees.  (*See* FA § 7.3.)  This same rate should be applied in any renewed calculations excluding any improper post-termination charges.

1170849, at *4 (noting that defendants did not dispute the liquidated damages clause contained in a negotiated franchise agreement).

The liquidated damages clause here is enforceable at it is contained in the negotiated Franchise Agreement and Defendants have not objected to it. (*See* FA § 12); *see Knights Franchise Sys., Inc.*, 2017 WL 1170849, at *4; *Columbia SC Hosp., LLC*, 2018 WL 3105421, at *5. However, Plaintiffs have not sufficiently proved their entitlement to liquidated damages. In Section 12.1 of the Franchise Agreement, Defendants agreed that, in the event of a premature termination of the Franchise Agreement, they would pay liquidated damages to Plaintiffs in the amount of no less than $3,000.000 for each guest room of the Facility that they were authorized to operate at the time of termination. (*See* FA § 12.) Plaintiffs allege that at the time the Franchise Agreement was terminated, Defendant Maharaj LLC was authorized to operate 78 guest rooms at the Facility. (*See* Mot. at 8; Mallet Aff. ¶ 36.) Plaintiffs thus seek $234,000.000 in liquidated damages. (Mallet Aff. ¶ 37.) But while Plaintiffs provide evidence that Defendant Maharaj LLC was authorized to operate 78 guest rooms at the time it signed the Franchise Agreement in 2023, (FA at Schedule B), they do not provide documentation confirming that this number remained the same at the time of termination in 2025. The Court cannot confirm Plaintiffs' entitlement to $234,000 in liquidated damages without such evidence. As such, Plaintiffs' Motion with respect to their requested liquidated damages is **DENIED** without prejudice.[5]

---

[5] Plaintiffs also seek $40,505.40 in interest, calculated at the rate of 1.5% per month pursuant to Section 7.3 of the Franchise Agreement, that accrued through March 16, 2016. (Mallet Aff. ¶ 38; FA §§ 7.3, 12.1.) The Court concludes Plaintiffs' interest calculation is appropriate, pending confirmation that Defendant Maharaj LLC was authorized to operate 78 guest rooms at the time the Franchise Agreement was terminated.

iii. Outstanding Note Balance

Finally, Plaintiffs seek $367.543.46 for the outstanding principal balance of the Note, including interest. (Mot. at 8-9.) The original amount of the Note, opened on June 22, 2023, was $312,000. (Note at 1.) The Note provides that, on each anniversary of the Opening Date, an amount equal to the original amount of the Note divided equally by the number of complete years remaining in the franchise would be forgiven without payment. (*See id.*; Compl. ¶ 29.) The Note also provides that if the Franchise Agreement is terminated for any reason, the "outstanding, unamortized principal balance of this Note shall be immediately due and payable without further notice, demand, or presentment." (Note at 1.)

Here, Plaintiffs allege that the outstanding principal balance of the Note at the time the Franchise Agreement was terminated was the original amount ($312,000), despite the fact that over one year passed between the Note's Opening Date and the termination of the Franchise Agreement. (*Id.*; Mallet Aff. ¶ 39.) The Court cannot discern why the Note's outstanding balance as of March 20, 2025 remained at $312,000, and therefore cannot award Plaintiffs their requested damages without further documentation. Plaintiffs must submit an itemized statement setting forth the balance of the Note as of the date of the Franchise Agreement's termination.[6] *See Wingate Inns Int'l Inc. v. Nguyen*, No. 16-939, 2017 WL 1552319, at *3 (D.N.J. Apr. 28, 2017) (granting plaintiff's request for default judgment with respect to the outstanding balance of a Note where they provided an itemized statement setting forth the balance of the Note). The Court **DENIES**,

---

[6] The Court accepts the Note's provision that, in the event of default, it shall bear simple interest at a rate equal to the lesser of eighteen (18%) percent per annum or the highest rate allowed by applicable law from its due date (here, the date of termination) until paid. (Note at 1-2.) Plaintiffs shall apply this interest rate to the outstanding balance of the Note as of March 20, 2025 upon the provision of further documentation.

without prejudice, Plaintiffs' Motion with respect to its request for the outstanding principal balance of the Note.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment (ECF 9) is **DENIED** without prejudice.  An appropriate order follows.


*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Michael A. Hammer, U.S.M.J.
        Parties